**CITIZENS CONCERNED ABOUT TAXES, Citizens Alliance of Scranton, Petitioners,**

v.

**DEPARTMENT OF EDUCATION of the Commonwealth of Pennsylvania; School Board of the City of Scranton, Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1999.
Decided Oct. 26, 1999.

---

David L. Kurtz, Lake Ariel, for petitioners.

William W. Warren, Jr., Seth A. Mendelsohn, Harrisburg, for respondent.

Before FRIEDMAN, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

Citizens Concerned About Taxes and Citizens Alliance of Scranton (collectively, Petitioners)[1] have filed a Complaint in Equity/Petition for Review (Petition) in this court's original jurisdiction seeking injunctive relief against the Department of Education of the Commonwealth of Pennsylvania (Department) and the School Board of the City of Scranton (School Board). The School Board and the Department each have filed preliminary objections to the Petition, and those preliminary objections are presently before this court for disposition.

In July 1996, the School Board publicly announced that it was planning for the construction of a new high school for the school district. The School Board issued bonds and purchased a piece of property for the school. In 1997, the School Board submitted a plan (PlanCon A) to the Department for approval pursuant to sections 701.1 and 731 of the Public School Code of 1949[2] (Public School Code).

In February 1998, the School Board conducted a public hearing on the proposed high school construction project pursuant to section 701.1 of the Public School Code.[3] On February 25, 1998, the School Board authorized the issuance of bonds to finance construction of the new high school.

On March 14, 1998, Petitioners filed a Complaint in Equity (Complaint) in the Lackawanna County Court of Common Pleas (trial court). Claiming that the maximum building construction cost exceeded the aggregate building expenditure stan-

---

1. Petitioners are non-profit corporations consisting of taxpayers in the Scranton school district.

2. Section 701.1 of the Public School Code, Act of March 10, 1949, P.L. 30, *as amended*, added by section 1 the Act of June 27, 1973, P.L. 75, 24 P.S. § 7–701.1 and section 731 of the Public School Code, 24 P.S. § 7–731,

commonly referred to as Act 34 or the Taj Mahal Act.

3. Section 701.1 of the Public School Code provides that "a public hearing shall be held not later than thirty (30) days before the school district submits the initial building construction cost estimates to the Department ... for approval."

dard, Petitioners challenged the propriety of the public hearing held by the School Board and sought an order compelling the School Board to hold a public referendum pursuant to section 701.1 of the Public School Code.[4] The School Board filed preliminary objections to the Complaint, asserting that the trial court lacked equity jurisdiction because Petitioners had an adequate statutory remedy to their Complaint under section 731 of the Public School Code.[5] On July 14, 1998, the trial court sustained the preliminary objections, dismissed the Complaint for lack of jurisdiction and directed Petitioners to take their Complaint to the Department.

On July 22, 1998, Petitioners filed a formal request with Eugene Hickok, Secretary of the Department, for an investigation and hearing pursuant to section 731 of the Public School Code. Secretary Hickok forwarded the request to Carle Dixon Earp, Chief of the Department's Division of School Facilities, Bureau of Budget and Fiscal Management (Division Chief Earp), for a response. In a letter dated September 15, 1998, Division Chief Earp informed Petitioners that she was responding on behalf of Secretary Hickok and that she was treating Petitioners' request for an investigation and hearing as a citizen complaint under section 731(5) of the Public School Code. Addressing Petitioners' contention that the School Board failed to hold a proper public hearing, Division Chief Earp stated that, according to the Department's records, the School Board held the required public hearing on February 24, 1998. Addressing Petitioners' contention that a referendum is necessary in this case, Division Chief Earp stated that, according to the Department's files, the maximum building construction cost does *not* exceed the aggregate building expenditure standard; therefore, a referendum is not necessary at this time.[6]

Petitioners responded to Division Chief Earp's letter with a letter of their own, dated September 25, 1998. In support of their view that a referendum was necessary, Petitioners set forth calculations based on figures from PlanCon A, which, they believed, demonstrated that the project's maximum building construction cost exceeded the aggregate building expenditure standard. Petitioners asked Division Chief Earp to prepare a response within ten days and set forth the Department's calculations.

Division Chief Earp responded in a letter dated October 23, 1998. In that letter, she explained that Petitioners' calculations were flawed in three ways. First, Petitioners erroneously included site ac-

4. Section 701.1 provides that if the maximum building construction cost exceeds the aggregate building expenditure standard, then the school district must hold a public referendum on the construction project. Section 701.1 explains those costs that are to be included and excluded from the "maximum building construction cost." Section 701.1 also explains that the "aggregate building expenditure standard" is the "rated pupil capacity" for each building multiplied by a certain dollar amount set by the Department for each pupil.

5. Section 731 of the Public School Code, 24 P.S. § 7–731, states that the Department shall have the power and duty: (1) to review all projects for school building construction; (2) to assist school districts in preplanning construction projects; (3) to "hold hearings on any or all projects and subpoena witnesses, administer oaths, take testimony and compel the production of documents relevant to any investigation;" (4) to act as a liaison between the public and local school officials on school building construction projects; (5) to "receive and investigate complaints from the public or other source concerning any school building construction ... project;" and (6) to "conduct investigations on any phase of school building construction ... projects."

6. Division Chief Earp also addressed Petitioners' contention that the school district was in fiscal distress and that the school district violated laws governing the issuance of debt. Division Chief Earp stated that the Department's file does not indicate that the school district is in fiscal distress. Division Chief Earp also stated that questions regarding the school district's bond issuance should be directed to the Pennsylvania Department of Community and Economic Development.

quisition and development costs in the figure for building construction costs.[7] Second, Petitioners' figure for maximum building construction cost was higher than the figure submitted to the Department in PlanCon D. Third, Petitioners' student capacity figure was lower than the figure indicated in PlanCon A. According to the Department's figures, the aggregate building expenditure standard for the School Board's project was $45,374,414 and the maximum building construction cost was $40,146,600. Thus, according to Division Chief Earp, a referendum was not necessary at that time.[8]

On May 3, 1999, the Department gave final approval to the School Board's plan for bid awards (PlanCon F).[9] As a result, the School Board voted to award bids to contractors and to begin construction of the new high school.

On May 13, 1999, Petitioners filed their Petition in this court's original jurisdiction. In their Petition, Petitioners allege that the School Board failed to hold a public referendum and a proper public hearing before contracting to construct the new school. Petitioners allege that the Department failed: (1) to conduct an investigation and to hold a hearing on whether a referendum is necessary here; (2) to require the School Board to hold a public referendum or a proper public hearing; and (3) to require the School Board to demonstrate that the school district is not financially distressed,[10] that taxpayers can fund the debt[11] and that the proposed site for the school is not a danger to the health, safety and welfare of citizens and students.[12]

Based on these allegations, Petitioners ask this court: (1) to enjoin the School Board from taking further measures to construct the proposed new school; (2) to enjoin the Department from taking further measures to sanction the School Board's proceeding with construction; (3) to order the Department and the School Board, jointly and severally, to reimburse Petitioners for reasonable attorney's fees and costs of litigation; and (4) in the event we find the Department's action to be a final administrative decision, to determine that the Petition is a proper petition for review and to reverse that final decision, or, in the alternative, to remand the case to the Department for a proper investigation and hearing under section 731 of the Public School Code.[13]

---

7. Division Chief Earp referred to a portion of section 701.1 of the Public School Code that states that building construction costs do not include costs for site acquisition and development.

8. Division Chief Earp indicated that the Department would continue to monitor the maximum building construction cost figure and, if it would exceed the aggregate building expenditure standard at any time, the Department would direct the school district to hold a referendum.

9. Section 731 of the Public School Code states that no public school building shall be contracted for until the plans and specifications have been approved by the Department. 24 P.S. § 7–731. The Department's regulation at 22 Pa.Code § 21.82 states that the Department will give "final approval" to bids when the bids to be accepted by the school board are below the cost constraints of 22 Pa.Code § 21.51 and meet the requirements of section 751 of the Public School Code, 24 P.S. § 7–751. The regulation at 22 Pa.Code § 21.51 prohibits the Department from ap-

proving a project if the most recent financial report submitted by the school district shows evidence of possible fiscal distress. Section 751 of the Public School Code prohibits engineers and architects who are employees of the school district from bidding on the work. 24 P.S. § 7–751.

10. *See* 22 Pa.Code § 21.51(3).

11. *See* 22 Pa.Code § 21.51.

12. The regulation at 22 Pa.Code § 21.71 states that the Department's approval of a preliminary plan is contingent on a determination by the Department that no aspect of the project upon completion presents a danger to the health or safety of the users of the facility or the public.

13. Petitioners also requested a preliminary injunction in their Petition. However, on June 22, 1999, this court issued an order denying the request for a preliminary injunction.

On June 2, 1999, the School Board filed preliminary objections to the Petition. On June 8, 1999, the Department also filed preliminary objections to the Petition.

A threshold issue raised by the Petition and the preliminary objections is whether the Petition belongs in this court's original or appellate jurisdiction. In order to resolve this matter, we must determine whether the Department's May 3, 1999 letter to the School Board, giving final approval to PlanCon F, constitutes a final and appealable order of the Department.

■ Rule 341(a) of the Pennsylvania Rules of Appellate Procedure states that an appeal may be taken as of right from any final order of an administrative agency. Pa. R.A.P. 341(b) defines a final order as any order that: (1) disposes of all claims and of all parties; (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule.[14] The second and third definitions do not apply here; thus, our inquiry is whether the Department's May 3, 1999 letter disposes of all claims and parties.

The Department's May 3, 1999 letter approved the School Board's PlanCon F and authorized the School Board to award bids and to enter into contracts for construction of the new high school. Petitioners claim that the Department could not legally give such approval and authorization: (1) without requiring that the School Board hold a proper public hearing; (2) without requiring that the School Board hold a referendum; (3) without holding a hearing on the need for a referendum; and (4) without requiring that the School Board comply fully with relevant regulatory requirements. Certainly, the Department's May 3, 1999 letter disposes of those claims as to all parties. By issuing the

letter, the Department effectively determined that the School Board had held a proper public hearing, that it was not necessary for the School Board to hold a referendum, that the Department was not required to hold a hearing on the need for a referendum, and that the School Board had complied fully with relevant regulatory requirements. Thus, we shall treat the Petition as if it had been filed in our appellate jurisdiction.

In its preliminary objections, the School Board argues that this court lacks appellate jurisdiction over the Department's May 3, 1999 letter because Petitioners failed to exhaust their administrative remedies under 1 Pa.Code § 35.20. We agree.

■ The Department's regulations state that 1 Pa.Code Part II (relating to the general rules of administrative practice and procedure) is applicable to the activities of, and the proceedings before, the Department. 22 Pa.Code § 1.6. Because 1 Pa.Code § 35.20, upon which the School Board relies, is found in 1 Pa.Code Part II, that regulation applies here. The regulation at 1 Pa.Code § 35.20 states: "Actions taken by a subordinate officer under authority delegated by the agency head may be appealed to the agency head by filing a petition within 10 days after service of notice of the action." The phrase "agency head" is defined in relevant part as the "secretary of a department." 1 Pa.Code § 31.3.

Here, Petitioners wrote directly to Secretary Hickok regarding their concerns about a proper public hearing, a referendum on the school building project, and compliance with all regulatory requirements. Petitioners specifically requested a hearing on these matters. Secretary Hickok delegated the matter to Division Chief Earp.[15] In her September 25, 1998

14. Pa. R.A.P. 341(c) provides that a governmental unit may enter a final order as to fewer than all of the claims and parties upon an express determination that an immediate appeal would facilitate resolution of the entire case.

15. The regulation at 22 Pa.Code § 21.22(b) states that the "Department" shall designate a person to act as liaison with the school district and the public on the project. References to the "Department" in the regulations are construed to mean the Department acting

letter to Petitioners, Division Chief Earp informed them that Secretary Hickok had forwarded the matter to her for a response, and she proceeded to provide a thorough response to Petitioners' complaint. Division Chief Earp specifically explained that, according to the Department's records, the School Board had held a proper public hearing, a referendum was not necessary and there had been full compliance with the regulatory requirements. However, Division Chief Earp did not give Petitioners the hearing that they requested.

Instead of appealing to Secretary Hickok, Petitioners wrote another letter, this time to Division Chief Earp, asking for the Department's calculation of the maximum building construction cost and the aggregate building expenditure standard.[16] Division Chief Earp provided Petitioners with the information, and, again, Petitioners did *not* appeal to Secretary Hickok. Because Petitioners failed to file a timely appeal to Secretary Hickok, Petitioners have waived their right to further challenge the issues addressed by Division Chief Earp and Division Chief Earp's failure to grant Petitioners a hearing on those issues.

Accordingly, we dismiss the Petition.

### O R D E R

AND NOW, this 26th day of October, 1999, the Complaint in Equity/Petition for Review filed by Citizens Concerned About Taxes and Citizens Alliance of Scranton is dismissed.

by and through the Secretary personally. 22 Pa.Code § 1.1. Here, Secretary Hickok personally designated Division Chief Earp to formulate a response to Petitioners' request.

**16.** This time, Petitioners did *not* request a hearing.